# CIRCUIT COURT OF BALTIMORE CITY.

---

Filed May 22, 1928.

---

GEORGIA M. BLAIR
VS.
HERMAN T. BLAIR.

---

Argued before JAMES P. GORTER, Chief Judge, and CHARLES F. STEIN and EUGENE O'DUNNE, Associate Judges.

---

*James Fluegel* for complainant.

*W. Calvin Chesnut* and *Stuart S. Janney* appearing on behalf of the Baltimore City Bar Association as "amicii curiae" on special invitation of the Circuit Court.

O'DUNNE, J.—

This is an uncontested divorce case. The questions presented here are (1) whether the facts amount to "collusion," such as would disentitle the complainant to the relief sought; and (2) whether the practice followed in this case is ethical?

The facts, briefly, are: Complainant desiring a divorce, sued defendant on ground of adultery. Complainant's solicitor, before bringing suit, wrote the defendant and got his consent to pay costs and complainant's counsel fee, conditioned on wife waiving claim to alimony. Suit thereupon was filed and defendant served. Thereafter, complainant's solicitor drew answer for defendant, had him acknowledge same before notary public and filed such answer; took testimony of complainant by deposition, sending her questions

and answers already prepared and typewritten, requiring only her signature and affidavit (though advising her she might change any of the answers if not in accordance with what she wanted to swear to). They were executed and returned as forwarded.

The case was submitted for decree January 21, 1928, exactly thirty days from filing of the bill—the earliest possible time a decree could be signed under the statute. The Circuit Court, becoming suspicious of the surrounding circumstances, held the cause for further investigation. The above facts were not disclosed to the Court in the first instance when submitted for decree but only upon inquiry instituted by the Court itself.

We are indebted to the professional spirit of an organized bar for the very exhaustive research work conducted by Mr. W. Calvin Chesnut and Mr. Stuart S. Janney, and to their most clear, fearless, eminently fair and wholly impartial presentation of the law of collusion with its many limitations and refinements, as well as their very full discussion of the *practice* as here adopted, and its evils as here illustrated, causing in this very case a delay in the Court's action from January last until now.

On submission of cause at the conclusion of argument yesterday, we promptly arrived at a unanimous conclusion, which is in entire accord with the legal arguments as presented by Messrs. Chesnut and Janney.

We are of the opinion that the results arrived at in this case were brought about by such an irregular and improper method of approach as to quite possibly warrant a conclusion of collusion such as would justify a dismissal of the bill, but we do not feel wholly warranted in drawing that conclusion. The facts alone, considered apart from the methods of approach as adopted by the solicitor for complainant, do not, we think, fairly and satisfactorily warrant that finding, and we, therefore, conclude that the complainant *is* entitled to a decree of divorce, and, but for the methods adopted by her solicitor, would have had such decree last January.

2. As to the ethics of the practice invoked in this case. We do not think it can be too strongly and emphatically condemned. We disagree with the solicitor for complainant in his statement that this has been an approved practice for 20 years. But irrespective of the extent of the practice, the duration of its existence or by whom approved or by whom adopted, we unequivocally condemn it, as inconsistent with sound legal ethics, and wholly at variance with the best traditions of the profession. It is fraught with dangers, too obvious to require discussion, would lead to collusion and to both fraud on the parties, and fraud on the Court.

The exact questions here presented have lately been formally considered and publicly answered by the "Committee of Legal Ethics" of the New York County Lawyers Association, which committee is composed of a group of most eminent members of the New York Bar, who have given freely of their time and talents and are making constant and continued contributions to the work of uplifting and guiding the ethical thought and conduct of the profession. We cite with approval their findings in their recently published inquiry known as "Answer No. 265 of the Legal Ethics Committee":

## NEW YORK COUNTY LAWYERS' ASSOCIATION.

*Committee on Professional Ethics.*

In answering questions this committee acts by virtue of the following provisions of the by-laws of the Association, Article XVI, Section III:

"This committee shall be empowered when consulted to advise inquiries respecting questions of proper professional conduct, reporting its action to the board of directors from time to time."

It is understood that this committee acts on specific questions submitted ex parte, and in its answers bases its opinion on such facts only as are set forth in the question.

### QUESTION No. 265.

**Advice—Agreement — Disclosure—Divorce— Duty to Court—Husband and Wife—Relation to Adverse Party.**

Preparation for defendant in divorce suit by plaintiff's attorney, of answer to complaint, and also of answers to interrogatories, to be sworn to by plaintiff, and giving of advice to defendant by plaintiff's

attorney—Disapproved; agreement between husband and wife in respect to alimony, cost and counsel fees—Considered; disclosure of such facts by plaintiff's attorney to Court before decree; or after decree has been entered, and then set aside to enable Court to inquire into such facts.—Disclosure does not justify impropriety.

In the opinion of the committee is it proper for the attorney for a wife in a divorce suit brought by her

(a) To prepare for the husband, not appearing by or represented by an attorney, an answer to be executed by him and filed in his behalf in the suit, denying the charges against him in the complaint and calling for proof thereof (though admitting the other jurisdictional facts), for the purpose of avoiding the delay in the suit incident to serving him with process as a defendant and awaiting his appearance or default;

(b) To prepare interrogatories with the answers thereto already written down and transmit the same to the wife (his client, the complainant) she residing outside of the State, the same to be filed in the case after she had sworn to the same before a notary out of the State authorized by order of Court to take her testimony, the same to be used in the case as her testimony, the attorney contending that the answers already prepared by him in type-written form for her execution were based on information previously given him orally or by letter correspondence;

(c) To advise the husband as to the making of the answer to the bill;

(d) To do the acts indicated in (a), (b) and (c), or any of them, without disclosure to the Court of his participation therein;

(e) Would it make any difference in the committee's answer to the inquiries if the attorney voluntarily disclosed to the Court before decree his said participation;

(f) In the case supposed the husband does not desire nor intend to defend, other than by interposing the answer at the request of the plaintiff's attorney, nor does he desire nor intend to procure the services of an attorney in his behalf nor as his adviser;

(g) In such case, would it make any difference in the committee's answer if, before the institution of the suit, the husband agreed to pay complainant's solicitor a counsel fee (allowable under Court practice), the amount in the case not being determined by the Court but determined by complainant's solicitor and agreed to by the husband, who simultaneously also agrees that he will pay the costs and complainant's solicitor's fee, conditioned on alimony being waived, the husband also being advised at the time by complainant's solicitor that he has the right at any time before the case is closed to employ an attorney and offer testimony, but he does not do so;

(h) Would it make any difference in the committee's answer if, instead of making the disclosure to the Court before decree, the disclosure were deferred until after a master's or a referee's report upon the papers submitted, recommending a divorce, and the entry of decree accordingly, and subsequent inquiry by the judge after setting aside the decree for the purpose of such inquiry.

### ANSWER No. 265.

The opinion of the committee is as follows:

(a) and (c) The attorney for the wife should not act for the husband in any respect; he should refrain from the preparation of the answer and the giving of professional advice to the husband.

(b) The attorney should not formulate the answers to be given by the wife as a witness (see matter of Eldredge, 82 New York 161).

(d) The disclosure would not make the conduct proper.

(e) No.

(f) (g) No; moreover, interrogatory (g) indicates that the attorney may have put himself into a position where his personal desire for the compensation may conflict with the interests of his client in waiving the alimony.

(h) No; the difference between a voluntary disclosure as indicated in (d) and the subsequent disclosure as indicated in (h) may have some bearing upon a lawyer's good faith; but not upon the propriety of his conduct mentioned in (a), (b) and (c).

The judge regularly sitting in Circuit Court has accordingly this day signed the decree for divorce in this case in favor of complainant.